Good morning, your honors. May it please the court, I'd like to reserve two minutes for a rebuttal. No problem, granted. Thank you. My co-counsel, Mr. Sekanic, ceded to me the full 15 minutes of argument, and thus essentially waived argument on his CJA appeal, number 14-1874. I'd just like to call the court's attention that he's done a lot of work on this case in the last four years, and also spent considerable out-of-pocket money. His application is unopposed. In the case on the merits, in 2009, the Supreme Court of New Jersey adopted a rule previously unknown, as far as I can tell, not only to New Jersey jurisprudence, but to American jurisprudence. And that rule, as interpreted at least by the lower courts in New Jersey, is that if you have ever claimed innocence, you may not plead guilty. You're legally disabled. Now, wasn't that rule taken at one point from a Supreme Court case from way back when? Back in the 20s? No, no, no. I'm talking about when was Alford from the Supreme Court? Well, they did cite Alford, and the state cites Alford. Alford has nothing to do with this case. Alford says that it's not unconstitutional to say, I'll plead guilty, but I'm innocent, or I'm innocent, but I'll plead guilty. Well, I mean, that's like a plea of no contest in some ways. I'm sorry? It's like a plea of no contest. Yes, yes. New Jersey does not allow Alford pleas, and it decided that prior to 1990, or at least in 1990. There's no controversy here about Alford pleas, because the defendant in this case had no intention to offer an Alford plea. There's not a sliver of evidence in the record. But you've got a practical problem. I mean, it would seem that, did he even need to assert his innocence at the PCR evidentiary hearing? Did he even need to assert it, bring it up? Well, no, he didn't bring it up. The judge brought it up. Could he have avoided saying anything about his guilt? If the judge asked him? Well? I don't know. What exactly did the judge ask? How did it transpire here? He said, the judge said, I understand, Mr. Ticetto, that you claim you're innocent. And Mr. Ticetto said, yes. And the judge said, but you're telling me right here now that you would have raised your hand and sworn to tell the truth, and you would have said you were guilty in order to accept that plea. And Mr. Ticetto said, yes. There was extensive, repetitious questioning by the state. The whole story appears on page 32 of the state's brief. But in essence, the only elaboration was the court said you didn't want to take the stand and lay a factual basis that you participated in the aggravated manslaughter of Vincent Capraparata Ticetto. No, I wouldn't want to do that. No, court, you didn't want to do that, Ticetto, but I would have. Court, oh, that's not helpful. Ticetto, no, I would have, absolutely. Court, so what you're telling me is you would have taken the oath and put through a plea, and you would have lied and said I participated in the aggravated manslaughter of Vincent Capraparata if the deal was right. Ticetto, yes. So, I mean, basically what you've got is an internal New Jersey rule that says that if you tell the court that you're going to, you would, not that you necessarily have, but that you would perjure yourself and you were very direct, as Mr. Ticetto was here, we can't go forward. Yes, Your Honor, but that, my point is that was a rule that was concocted by the court in 2009. Right. Well, not concocted, I mean. It was invented. They obviously thought about this rule, and they thought that what they were doing was a follow-up to what Alford would require. Did they not? It has nothing to do with Alford. I understand, but the question is why did they adopt the rule? Because you want fairness and reliability in your hearings, do you not? Yes. And here somebody is saying I would commit perjury. He didn't say I would commit perjury, Your Honor. He said I would get up there and swear, and he didn't. The judge in the leading question said you would lie, and he said yes. But I would have. Oh, that's not helpful. No, I would have, absolutely. But, Your Honor, what choice did he have when asked that question? The alternative could very well have been no, Your Honor, I wouldn't do that. Let's go back to what he could have said. You didn't want to take the stand and lay a factual basis that you participated in the aggravated manslaughter of Vincent. He could have said, no, I didn't really want to take the stand. He could have said that, but he also knew that that's not the way you get a plea accepted in New Jersey. Well, the court then said so. Actually, he said the right thing initially. No, I didn't want to do that. No. Court, you didn't want to do that? He could have said, but I would have. He then changed the whole tenor of everything. He didn't want to take the stand. He could have just said, and the court said you didn't want to do that, he could have said that's correct. So he, Mr. Cicetta, opened the door. Mr. Cicetta is not a lawyer. He was not prepped for this conversation at all. And he was concerned that if he just said I wouldn't want to do it, that the judge would say, well, then you wouldn't have pled guilty. He had to prove that he would have accepted the plea. And it seemed perfectly sensible for him not to just leave it at I don't want to, wouldn't want to do that. What clearly established Supreme Court precedent is there to support your argument that the New Jersey Supreme Court violated clearly established federal law? Strickland against Washington. Okay. Strickland is where you have counsel performing below an accepted level of competence, and there is prejudice that results from that. Yes. Okay. Tell me how that applies here. The test under Strickland and the gobs of other cases is whether, in a guilty plea case, it's whether there's the reasonable probability that the defendant would have pled guilty. The facts surrounding 1993 were all one way. There was not a shred of evidence that he would have claimed he was innocent, tried to sneak by some kind of guilty plea that did not require him to say he was guilty. He knew, his lawyer knew, in New Jersey you have to say you're guilty or you can't enter a plea. And it was, if you just look at the facts, it is unmistakable that he would have pled guilty and he would have said I'm guilty of aggravated manslaughter. Now, he didn't know what aggravated manslaughter was. He essentially assumed that it was murder, and he said I'm innocent of murder, but I would plead. Well, that was a hypothetical that really was irrelevant. He didn't have to plead to murder. He had to plead to aggravated manslaughter, which I point out he was guilty of vicariously, as the Appellate Division said back in 1997. He would have had to lie in order to say I'm guilty of aggravated manslaughter. So while he assumed he would have to lie, the fact is he wouldn't have had to lie. Was it explained to him at the colloquy what aggravated manslaughter is? Was it explained? Was there a plea agreement here also? I'm sorry? When was it explained to him, if at all, what aggravated manslaughter is? It was never explained. Never explained at all? Far as I know. What was said at the plea colloquy? I'm sorry? What was said at the plea colloquy? There was no plea colloquy. Well, he was before the judge, I'll guess on this, what I just quoted. The judge would have said it's an aggravated killing not intended to take life, something to that effect. But the judge would certainly have to explain or have to accept the suggestion that you can be guilty of aggravated manslaughter even though you didn't kill anybody if, in fact, your co-conspirator killed somebody. In fact, Mr. Tassetta was convicted of a conspiracy, the object of which was to kill Trapparata. That would have supplied the factual basis. And he was convicted of that conspiracy. Let's assume for the moment, let's just say we granted habeas relief here, what would an appropriate remedy be? You know, I have to acknowledge that's a difficult question. That's why we often ask them. As I point out in my brief, and I would think the State's brief also supports this, a reoffer of the plea would be no remedy at all. Because as the State says, the judge would be obliged to refuse the plea. And I can't imagine the plea being reoffered in any event. I'm sorry? I don't think anybody here can imagine the plea being reoffered in any event. If you got habeas relief and you said reoffering the plea wouldn't help, I also can't imagine that that would be an option on the table anyway. Very well. I won't argue with that. So now what are you asking for to grant habeas relief and to say that somehow he got ineffective assistance of counsel? And I assume the ineffective assistance of counsel was he perceived that it was 20 years? It was offered 20 years. And with eight under supervision? Yes. He thought it was eight, but it was really 20 and 10? 20 and eight. 20 and eight. That's what he was offered. He was offered. Yes. And he ended up with life plus 10 based upon his attorney's erroneous advice. There really isn't any question that he had ineffective counsel. So what's the remedy if we can't? I would suggest that a 20-year sentence, order the state to re-sentence him to 20 years, which is what he would have gotten, and then let them figure out if he's already served that time or not. Do we have the authority to do that? I'm sorry? Do we have the authority to do that? You have the authority to enter a judgment and impose a remedy that is just and appropriate under the circumstances. May we tell the state court we're sentencing for you? No, perhaps not. Perhaps not. Say we're going to grant this writ unless within 30 or 60 days you re-sentence the defendant to 20 years. That's certainly within this court's authority. I did suggest by brief that this court might alternatively order the, suggest to the state that in order to avoid the grant of the habeas corpus writ, that the state court enter a judgment, a sentence of time served, but it's pretty clear that he has served more than he would have served under a 20-year sentence, but the state could figure that out. The basic point here, Your Honor, is that the state made up a rule which had never been the rule in New Jersey up until 2009. Surely thousands of people in New Jersey have claimed innocence and later entered a guilty place. Is this really the case to attack such a rule? I mean, what you have here is it's not a, you don't have a profession of I'm going to perjure myself, then back it off. And just because he did it once and backed off, this is, the record's very clear. I mean, he never went back on his testimony that he was going to perjure himself and that he was innocent. But, Your Honor, he was talking about and had in mind, and it's clear as day, I didn't kill this man, but I'll go say I did if I have to. So that was a hypothetical that really didn't apply to the case because he wouldn't have to admit that he killed the man. He would simply have to admit what he's already been convicted of, which was he was a co-conspirator with the killer. But the point is that you have time on rebuttal. Is that right? I'm sorry. No, we'll get you back. Is anyone else going to be? I'm sorry? The ACLU is going to argue as well. So we'll get you back on rebuttal. Sure. Thank you. Thank you. Good morning, Your Honors. My name is Benjamin Yaster. I represent Amicus Curia at the ACLU of New Jersey. I want to thank the Court for allowing me five minutes of argument time. This case presents an extremely important issue, and the ACLU is deeply concerned about it. The state court decision that is under review, that is Ticetta, it threatens the Sixth Amendment rights of the many criminal defendants who at some point in their criminal proceedings say that they're innocent. This case is about Ed Pedefrans. I mean, I don't understand why you view this as the case to the charge of San Juan Hill. So I think there are two responses to that. The first is Ticetta has been – Ticetta is the case that in New Jersey has led to people who – that has led to the denial of Sixth Amendment relief to criminal defendants who received bad advice from their lawyers and turned down plea offers, but then can't get relief because they at one point asserted their innocence. The other reason is that this was an unreasonable application, or it was contrary to an unreasonable application of federal law, and it was an unreasonable determination of the facts. Well, I don't know. I don't see what law or what Supreme Court decision is contrary to or an unreasonable application of. It starts with Strickland, and it includes Lafleur. Well, let's go – we understand Strickland. Let's go to Lafleur. Okay. Lafleur talks about fairness and reliability of the process that precedes, in that case, the trial. Fry was a plea, and Lafleur was a trial. So what is unfair and unreliable with regard to someone saying, not that I have perjured myself, but I would enter a plea with perjured testimony? And I'm telling you right now, I would do that. What is the court to do there? And, you know, you're asking us to really just go further than Lafleur and intrude ourselves into how a state goes about the process of accepting a plea. Okay. So the first point that we should just get on the table is that under Lafleur, the analysis that this court, and actually what the New Jersey Supreme Court should have done, is to look at the reasonable probability that a trial court would have accepted to set its plea. Now, in New Jersey, there are two limitations on when a plea can be accepted. The first is there are no Alfred pleas allowed, which means that you can't come to court, plead guilty, but say, actually, I'm innocent. That's not permissible. And also to be clear, that's not what Martin DeSantis said he was going to do. What DeSantis said he was going to do is, I'm going to go into court and I'm going to say I'm guilty. I'm not going to say I'm innocent. Okay, so this is not about Alfred pleas. The second limitation on guilty pleas in New Jersey is that a court cannot accept a guilty plea that is known to be false. That's important because what the rule in New Jersey is not is that if a defendant has ever said he's innocent, he's thereafter forbidden from pleading guilty. Could he have pleaded no contest? Is there such a thing that's allowed? My understanding is that there's not. There always has to be a factual basis for the guilty plea. So there's no contender or no contest pleas. Well, you can understand why a court would do that. There has to be a factual basis for the plea. Oh, no doubt about it. But I just want to come back to the point about what the second limitation is. So the second limitation on guilty pleas is that if a guilty plea is known to be false, it can't be accepted. In other words, a defendant cannot plead guilty to a crime he did not commit. It's important to keep in mind that that's what the state rule is because in New Jersey practice, and I'm sure this is true in many jurisdictions, defendants, one, assert their innocence at various points in their proceeding. They might say it at arrest. They might say it at arraignment. They might say it in conference with their lawyer. They might say it in testifying at a motion to suppress. And they might say it after they plead guilty, such as in trying to get PCR relief or in trying to move to withdraw a plea. The point is that even though a defendant might say he's innocent outside of the guilty plea hearing, it's very, very rare that trial courts ever credit that and refuse to allow that defendant to plead guilty or to withdraw the plea or vacate the plea on that basis. This is just the opposite. I mean, usually somebody's saying, okay, yeah, I've said this before, but now I'm telling you I'm guilty. Here, he's coming, says, I'm going to plead, and I'm telling you. I would say, if you ask me, I'm going to tell you that I'm guilty, but, in fact, I'm telling you I'm innocent. Okay, but that goes to – but it actually is not the opposite because the question here is, what would a trial court do if Martin Ticetta came and tried to plead guilty, and this fact was known to the court? The trial court would have to engage in an analysis of whether the guilty plea is actually false. Now, there would be evidence to suggest it's false, namely, to set as testimony that the guilty plea is perjured, but that would not be the end of the analysis. The trial court would be entitled to consider, one, to set as admission, two, to set as credibility at the guilty plea hearing, and three, any evidence that had – this is an odd case because there had actually been a trial, but evidence that had been introduced at that trial or evidence that had been proffered by the state during the guilty plea hearing. And the trial court, under those circumstances – He was acquitted at trial of murder, right? He was, but the acquittal only means that there is a reasonable doubt as to his participation in the murder. It doesn't mean that he is actually innocent. It almost seems like – it's not just an assertion of innocence here, and it's not just that there was an acquittal at trial of at least a murder charge. He also told the court that he intended to lie under oath. Is that also not relevant? Well, I agree it's relevant, but the question is whether it's dispositive. And I think the answer is no. Again, the Lafler analysis – You've got to parse that out. It's relevant, but it doesn't get you across the finish line because – is whether there is a reasonable probability that a trial court would accept Ticetta's guilty plea, notwithstanding what he said at the PCR hearing. In this case, a trial court would be within its discretion to not credit what Ticetta said at the PCR hearing. And indeed, it would actually make perfect sense for a trial court to not credit it because Ticetta had motivations, like every defendant has motivations, to misrepresent his actual culpability for the offense. So here, Ticetta's motivation would have been, if he had prevailed on his Sixth Amendment claim at the PCR hearing, the form of relief was going to be a new trial. So any statement that he made during the PCR hearing, that he was involved in the Craparata murder, would be used against him at that later trial. For that reason, a trial court, if it was accepting a guilty plea from Ticetta, could discount what Ticetta said. And even though Ticetta used very strong language and said that he would perjure himself, still, a trial court could discount that and accept the guilty plea. But the question we keep coming back to is, if Lafleur talks about fairness and reliability of the process, and a New Jersey court says that, under our rules, he is telling us that he would perjure himself, isn't fair, and it certainly isn't reliable, how are we to say that that's a violation of Strickland-slash-Lafleur? Well, because I think in that question, the way that you framed what the New Jersey rule is, which is if you testify that you are innocent or testify that you're guilty. They made a determination that it isn't fair to say that you are guilty of something when you continue to claim that you're innocent of that something. And it's also not reliable for us to go forward with the presumption that you are telling the truth when you tell us you will not tell the truth when the time comes. Yeah, so I think I respectfully read Ticetta differently. I don't think Ticetta was about fairness and reliability. You mean Lafleur? Oh, I'm sorry, yes. So Lafleur is about fairness and reliability, not of the trial, but of the processes that preceded it. Sure, but the other part of the fairness and the reliability includes what took place during plea bargaining. Now, here, Martin Ticetta received bad advice from his lawyer. The trial court and the appellate division and the New Jersey Supreme Court didn't pass judgment on this, but they found that his lawyer gave him erroneous advice about what his sentencing exposure was going to be. Let me ask you, let's assume we agree with you. Sure. What's the remedy? So the remedy should be. . . You're writing this opinion. What's the remedy? Yes. So let me just say the first thing is the remedy has to eliminate the taint of the constitutional violation. Here, what the remedy should be is an ordered reoffering of the plea agreement, and then it would be brought before a trial judge. I mean, although we can ask Mr. Yomtov if that would be done, but I think we can probably assume they're not going to reoffer the same plea. Maybe. They might, but I doubt it. So then what? So then I think the other option would be Ticetta has to be put in the position he was in before the ineffective assistance of counsel occurred. And. . . Which could be going to trial in an aggravated manslaughter claim, right? It would, yes, that's what it would be. And does he end up any differently? Well, I think. . . Well, I mean, yes, he could end up in a different circumstance because even though. . . I mean. . . Well, he was acquitted. Well, he was acquitted. So, okay, so there is a double jeopardy problem there. I agree, but. . . He was acquitted of murder, right? He was acquitted of the murder. Right. That's correct. So I think that what mandating a new trial leaves open is the opportunity for the parties to also renegotiate a plea deal in order to avoid going to trial. But if not, I mean, I think that if reoffering the plea is not an available remedy, then a new trial on the remaining charges would have to be it. Or a trial. Would it be a trial on. . . Was he tried on aggravated manslaughter the first time? Yes. Oh, he was? Okay. Yes. Okay. Yes. And then let me. . . If I can just make one final point. So the rule in New Jersey is that a guilty plea can't be accepted if it's false. What we know happens in practice is that defendants do assert their innocence but are still allowed to plead guilty. And the reason is because trial judges either don't credit those assertions of innocence or because trial judges find that they just lack enough information to make a decision one way or the other about whether the guilty plea is false. And so they allow the guilty plea to proceed. It's hard to walk away from a profession of I'm basically going to perjure myself on the record. But on the other hand, it's not that different. I really have trouble with this because as a trial judge for 16 years, I took plenty of guilty pleas, and I always made sure there was a factual basis for the guilty plea. And if I saw some hesitancy on the part of the pleading defendant, I would question that defendant some more. And if I was satisfied that he did not believe he committed this crime, I wouldn't accept the plea. And that's almost like rule 101. That's what we're supposed to do. We have to be sure that there's a factual basis for the plea. Right, and I agree. But what Tessetta testified to is that he said he was actually innocent and would perjure himself, but if given the opportunity to plead guilty, he would do so. Had he been given the opportunity to plead guilty, a trial judge would have been able to engage in this exact colloquy that you're talking about. And a trial judge at that colloquy could have been convinced that Martin Tessetta was fibbing during the PCR hearing because he had good reasons to misrepresent his actual culpability. The other point I would also say, too, is this case, although it does involve this strange set of facts where Tessetta testified at a PCR hearing that he would go ahead and perjure himself, has not been confined to those bounds. To the contrary, defendants are now being, or I should actually say PCR petitioners, are now being denied Sixth Amendment relief if they have ever asserted their innocence. So, for example, if a defendant ever told his lawyer, I'm innocent, but then decides to plead guilty. Well, I think those are the cases to raise this larger issue. Yeah, I mean, it really comes back to Judge Garris' question at the outset here. Aren't you picking the wrong set of facts to try to bring this particular amicus brief issue up? It doesn't seem like it's the right set of facts. You could end up with a precedential opinion going the other way on something that you're saying, darn, I should have waited for a better case, a better set of facts. Right. So, again, we chose this case because Tessetta is the precedent that gave birth to all of these future cases that we are so concerned about. But one thing I would say is if the court thinks that the facts of this case are extreme and unusual, I mean, I think that would be an important fact to highlight because the New Jersey courts certainly have not read Tessetta so narrowly. Thank you very much. Thank you. We'll give this to Yomtov. Good morning, Your Honors. Thank you. May it please the Court, Stephen A. Yomtov, Deputy Attorney General, representing the appellee's respondents in this case, the Attorney General of New Jersey, as well as the Superintendent of New Jersey State Prison. So if we were to vacate the conviction, what would the remedy be? If this court were to agree with Petitioner in terms of the prejudice argument, we would ask that this court certify to the New Jersey Supreme Court the state's arguments that were not addressed by the court, and that went to the first prong of Strickland, and that was the attorney error. We did not agree with the PCR remand judge's factual findings. It was our position that they were clearly erroneous. It was our position that this was just an informal, tentative plea offer, that it was not reduced to a writing. It would have required senior approval. It was a global settlement that all the co-defendants would have had to sign upon, and there were federal charges that were possibly pending. But you would think that the first prong of Strickland, we could look at without certifying that to the New Jersey Supreme Court. Why would you want to certify that issue, which it seems we can look at as easily as anyone else? Well, we're just asking that we would prefer that our own state Supreme Court take a look at them, because they ruled as a matter of law on the prejudice prong. Well, your adversaries, your friends across the aisle there, they've got a pretty well organized argument. Isn't this being raised in state court? It's got to be percolating toward the Supreme Court, some of the Sixth Amendment concerns. Well, when I was going to start this argument, I wanted to say what this case is about and what this case is not about. First of all, this case is governed by the AEDPA, so that's the overriding standard that this court should apply. Yeah, I got that one. And that the New Jersey Supreme Court itself is basically following Alford, and in that footnote it basically says that states are permitted under their state law to bar defendants who claim innocence, that they don't have to take the guilty plea. I don't think anybody disputes that here. But they've got some arguments. Is this on its way to the Supreme Court? No, because it gets to my second part, what this case is not about. This is not about defendants who in the preliminary stages are saying they're innocent, that they're entering pleas of not guilty. And I can say there's not a judge in the state of New Jersey, as Your Honor pointed out, that when a defendant appears at a formal guilty plea under oath in court, when they have to give a truthful, factual basis under court rule, if there's any hesitancy, that judge in New Jersey is not going to accept the guilty plea. So all these parade of horrors that the ACLU and Petitioner's Council is raising just aren't true. Our courts put a premium on innocence. In fact, our recent cases, such as Slater, that we had a case decided the other day, where defendants bring forth evidence, bring a culpable claim of innocence, they get their plea back. I mean, one of the concerns here is, and I think it's probably what spawned some of the ACLU's concern, is what are the consequences of what the New Jersey Supreme Court did here? Under this decision, if DeSeta had asserted his innocence at trial and not at the PCR hearing, would the same outcome have resulted? I don't think so, because as I said, if he had claimed innocence at the time that the guilty plea was going to be taken, yeah, the judge would not have accepted it. But as your Honor pointed out, this case is not just about a defendant saying that he's innocent. This is a defendant who acknowledged that he would have lied to the court. He would have accepted, in order to obtain a favorable plea deal, he would have committed perjury. In our state, we don't have that. We don't have Alfred Pleas. We don't have Noah Cotendre Pleas. You have to provide a truthful, factual basis, and that's what Alfred allows for. It allows for the states to preclude defendants who maintain their innocence from pleading guilty. And just as I just want to bring up, because I know Lafler keeps coming up, the point of Lafler is, and I believe that it's the petitioner's position, that we need to focus on whether he would have pled guilty. And that's not the test. The test is whether the court would have accepted or entered the guilty plea. In Frye, the court explicitly stated that that was a matter of state law. And if I could just briefly mention, because the petitioner filed what we call a 2611 letter, which is bringing a new case law to the front of the court. I did rely on the case of the Eastern District of Kentucky, which was U.S. v. Suwoff. And two months ago, the Sixth Circuit, which also issued the Griffin case that petitioner is relying on, reversed that case. But we do not believe that case, nor Griffin, is applicable. That's strictly Sixth Circuit law. That's what you just sent the 28J letter in on? I'm sorry? Is that what the 28J letter just came in on? Yes, 28J. I'm sorry. I didn't know that off the top of my head. It's our position that that dealt with a presumption of prejudice, which personally we're not familiar with, that strictly deals with federal law, and federal law accepts alpha pleas, so it's within that context. And also, if you look at Barth v. Titlow, that was also a Sixth Amendment case, and we believe that the Sixth Circuit is not putting the right emphasis on innocence and that this court is not bound by the Sixth Circuit, but bound by U.S. Supreme Court authority for applying the habeas standard. Any further questions? I have no further questions. Your Honor, can I just refer to the remedy? As Your Honor has pointed out on the aggravated manslaughter, the defendant was acquitted, so it would have been a double jeopardy problem that the only conviction that would remain would be the racketeering, and under LAFLA it would go back to the trial court to ascertain what a fair result would be. Double jeopardy, he was acquitted of murder? And the lesser included. Oh, and the lesser included. Yes. So then why did they go back later and deal with the aggravated manslaughter? How did that come up then? Well, it came up in the context. In 91, he was indicted on murder, first degree racketeering, second degree conspiracy to commit racketeering, and two counts of theft by extortion. Correct. Okay, but a 90th trial hadn't happened by then? Correct, Your Honor. Right. Yeah, the plea offer was prior to trial. The offer was prior to trial, and it came up, and the evidence came through at the PCR. Right, and it was the LAFLA scenario versus the Hill versus Lockhart scenario. Got it. So I just wanted to point that out. Got it. Okay, thank you very much, Your Honor. Actually, am I correct in saying the State would not be willing to re-offer the original? You say it's not? We can't offer the original. And it would be up to the, as I said, and as LAFLA makes clear, it would be up to the trial court to, you know, have a fair resolution. Because, yes, the defendant would receive, cannot get the original plea back. We can't get the original sentence back, so it would probably be something in the middle, you know, if that were the case. But as I said before, before Your Honors would reach that, we would like the opportunity, the State, to push forth the first prong of Strickland, and that is if this court were to certify it back to the New Jersey Supreme Court. Because we strongly believe that we would prevail if the court were to reconsider, meaning the New Jersey Supreme Court were to look at the PCR remand judge's factual findings, which we believe are clearly erroneous. Thank you. Thank you very much. With respect to Judge Ambrose's question, how could the court accept the plea in this case in 1993? In 1993, there would be no evidence whatsoever that the defendant claimed innocence. In a case, not this case, but some other case where the defendant claimed innocence, the court could make an inquiry and say, I understand you claimed innocence on previous occasions. Now you say you're guilty. How do you explain that? Clarify some facts for me, if you would. I'm sorry? Clarify some facts to me, if you would. What was the plea offer initially? Was it 28? Yes. And what was conveyed to Mr. Ticetta was, what, 20 and 10? What did his counsel convey to him? I think it was 20 to 10, yes. That was his maximum. And what was the ineffective assistance? The ineffective assistance is that the attorney told him that if he went to trial and the results were as they both expected, an acquittal of the murder and a conviction of everything else, his maximum would be 20 and a likely 5 to 10. And that was grossly erroneous. He got 5 plus 10. And he's ineligible for parole until 25 years? I thought it was 30, but it's a long time anyway. So the point of what he said in 2005 is totally irrelevant to the question of, would the plea have been entered and accepted? There is all the evidence that it would have been entered and accepted, because he didn't claim innocence. There's no evidence. The state says he had this repeated claim of innocence. There's no evidence in the record that he claimed innocence until 2005, and he was in a very erroneous, grisly choice position where if he said, no, I'm guilty, then what would be the point of granting him a new trial, which was the rule in that case? That's what he was supposed to get if he proved his case. If he got the new trial, they would just introduce the evidence that he swore under oath he was guilty. What kind of a trial would that be? So I submit that it was unconstitutional to put him to that choice and then to deny him a remedy for ineffective assistance in plea bargaining. There's no objection, though, by counsel during that colloquy between, you know, where he talked about he was going to lie? No, there was no objection. I don't know what the objection would have been. Maybe there would be one that would have been accepted, but the point is the judge wanted to know if you claim innocence, how do I know you would have pled guilty? That was what the judge wanted to know, and the judge was satisfied that notwithstanding his claim of innocence, he would, in fact, have accepted the plea. Is there anything? We'll give you one more minute to sum up. I'm sorry? We'll give you one more minute to sum up. The state insists that state law controls guilty pleas. The state can do anything they want. They didn't say the state can do anything. They said that in their brief. No, not quite. They can't put the defendant to a choice like this. If you want a remedy for ineffective assistance of counsel and the judge asks you if you're guilty, you have to say yes and give up any rights you might have to defend your guilt. If you go to trial, you better not say you're innocent. You better not even, under New Jersey law now, you better not even allow your lawyer to cross-examine the state's witness or you won't be able to plead guilty should you decide to. Again, it wasn't just that he said he was innocent. He said that he would lie in order to get the aggravated manslaughter plea. Yes, Your Honor, but I remind you that that was a hypothetical that wasn't actually applicable to this case. He did not have to lie. He did not have to say, I killed the man. That's what he was talking about. If I had to, I'd go say I killed the guy even though I didn't. The fact is he didn't have to say any such thing. So when he said I would have been willing to lie, that was a hypothetical. It doesn't apply to this case. There was ample evidence that he was vicariously liable. The answer is yes, no, and maybe. If it didn't apply to this case, why do we keep asking about it? Why would you keep asking about it? Because you don't understand the case. I think we do. He would not have to say he killed this man to plead guilty to aggravated manslaughter. He would not? That's correct. But at the PCR evidentiary hearing, he did say that he would lie in order to plead.  Yes, but the plain meaning of that, Your Honor, is if I had to, if I have to, I'll lie. If I had to, I would lie. He didn't have to. But looking at this from 10,000 feet, what you're asking us to do, as I said before, is to extend the reach of Lafler, are you not? No, I'm asking you to apply strictly against Washington. Well, no, but Lafler picks up on that. How do you get around Nix and Fretwell, the Supreme Court cases? I am not familiar at this moment. Well, the Nix is a case that says that if the attorney's conduct affected the outcome of the case, the defendant can't establish prejudice because of the attorney's conduct if it did not reduce confidence in the result of the trial. Fretwell said that unreliability or unfairness does not result if the ineffectiveness of the counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him. He was entitled to adequate, competent representation in plea bargaining, which he didn't get. And the judge found, and on all the evidence found, he would have pled guilty and the judge would have accepted it. I understand what you're saying. But once he said that he would lie in order to do the deal for aggravated manslaughter, how was that a deprivation of a substantive or procedural right? That itself was not, but to deny him a remedy because he said that, which was hypothetical, in which he had to say, otherwise there wouldn't be any point in seeking a remedy because the remedy was a new trial. But how could he get a new trial if he said, no, I'm guilty? I think we've surrounded the issue. Anyway, thank you very much. Thank you to all counsel. We'll take the matter under advisement.